**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| MARISA MARDER, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>CAMPBELL SOUP COMPANY, DENISE M. MORRISON, and ANTHONY P. DISILVESTRO,<br><br>Defendants. | Case No.<br><br>CLASS ACTION COMPLAINT<br><br>JURY TRIAL DEMANDED |

Plaintiff Marisa Marder, residing at 2307 Villa Oaks Court Gastonia, NC 28054, individually and on behalf of all others similarly situated, alleges the following based on personal knowledge as to Plaintiff and Plaintiff's own acts, and upon information and belief as to all other matters based upon the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of United States Securities and Exchange Commission ("SEC") filings by Campbell Soup Company ("Campbell" or the "Company"), as well as conference call transcripts and media and analyst reports about the Company. Plaintiff believes that substantial evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION AND OVERVIEW

1. This is a federal securities class action on behalf of all persons and entities who purchased or otherwise acquired Campbell common stock between August 31, 2017, and May 17, 2018, inclusive (the "Class Period"), seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act") against Campbell and certain of its current and former officers (collectively, "Defendants").

2. Campbell is a global food company that sells soups, packaged meals, beverages, snacks, and packaged fresh foods. Through its "Campbell Fresh" division, the Company sells refrigerated beverages, salad dressings, and fresh carrots and carrot ingredients under the Bolthouse Farms brand name, and salsa and hummus under the Garden Fresh Gourmet brand name.

3. The Class Period begins on August 31, 2017, to coincide with the Company's announcement of its financial results for the fourth quarter and full fiscal year 2017. In conjunction with this announcement, Denise M. Morrison, the Company's President and Chief Executive Officer until May 18, 2018, assured investors that the Company expected the Campbell Fresh division to "return to profitable growth in fiscal 2018." Similarly, Anthony P. DiSilvestro, the Company's Senior Vice President and Chief Financial Officer, stated that the

Company "expect[ed] [Campbell Fresh] to have sufficient capacity to support [the Company's] growth plans in fiscal 2018."

4. On November 21, 2017, however, the Company announced disappointing first quarter fiscal 2018 financial results, including a decrease in operating earnings for the Campbell Fresh division from a gain of $1 million in the first quarter fiscal 2017 to a loss of $6 million in the first quarter fiscal 2018. As a result, the Company reduced its fiscal year 2018 earnings guidance. Despite this news, Defendant Morrison continued to assure investors that the Company "expect[ed] Campbell Fresh to return to profitable growth [in fiscal 2018]." Despite Defendants' attempts to assuage shareholder concerns, the price of Campbell common stock fell over 8% in response to the poor results and lowered guidance, from a close of $49.93 per share on November 20, 2017, to close at $45.84 per share on November 21, 2017.

5. Then, on February 16, 2018, the Company announced poor financial results for the second quarter of 2018, including a further decline in the Campbell Fresh division's operating earnings from a loss of $3 million in the second quarter fiscal 2017 to a loss of $11 million in the second quarter fiscal 2018. Once again, the Company reduced its fiscal year 2018 earnings guidance. On this news, the price of Campbell common stock fell approximately 10% over three trading days,

from a close of $47.70 per share on February 15, 2018, to close at $42.90 per share on February 21, 2018.

6. Finally, on May 18, 2018, the Company announced disappointing financial results for the third straight quarter, including a $19 million loss for the Campbell Fresh division in the third quarter fiscal 2018. The Company reported that the poor performance of Campbell Fresh had forced the Company to take a $619 million pre-tax non-cash impairment charge for the division and had, in part, prompted the Company to further revise its fiscal year 2018 earnings guidance. The Company simultaneously announced that Defendant Morrison was stepping down immediately as Chief Executive Officer of the Company. On this news, the price of Campbell common stock fell over 12%, from a close of $39.22 per share on May 17, 2018, to close at $34.37 per share on May 18, 2018.

7. The Complaint alleges that, throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically: (i) Defendants failed to disclose known trends that were negatively impacting the profitability of the Campbell Fresh division; and (ii) as a result of the foregoing, Defendants' positive statements about the Company's and the Campbell Fresh division's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

8. As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's common stock, Plaintiff and other Class Members suffered damages.

## JURISDICTION AND VENUE

9. The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act, 15 U.S.C. §§ 78j(b) and 78t(a), and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

10. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act, 15 U.S.C. § 78aa.

11. Venue is proper in this District pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1391(b). Campbell is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' actions took place within this District.

12. In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets. Campbell's common stock trades in an efficient market on the New York Stock Exchange ("NYSE") under the ticker symbol "CPB."

## PARTIES

13. Plaintiff Marisa Marder, as set forth in the accompanying certification, incorporated by reference herein, purchased Campbell common stock at artificially inflated prices during the Class Period and has been damaged thereby.

14. Defendant Campbell is a New Jersey corporation with its principal executive offices located at One Campbell Place, Camden, New Jersey 08103.

15. Defendant Denise M. Morrison ("Morrison") was the President and Chief Executive Officer of Campbell from the beginning of the Class Period through May 18, 2018.

16. Defendant Anthony P. DiSilvestro ("DiSilvestro") is and, throughout the Class Period, was the Senior Vice President and Chief Financial Officer of Campbell.

17. Defendants Morrison and DiSilvestro are collectively referred to herein as the "Individual Defendants." The Individual Defendants, because of their positions with the Company, possessed the power and authority to control the contents of Campbell's reports to the SEC, press releases, and presentations to securities analysts, money portfolio managers, and institutional investors, *i.e.*, the market. Each Individual Defendant was provided with copies of the Company's

reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected. Because of their positions and access to material non-public information available to them, each of these Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.

## SUBSTANTIVE ALLEGATIONS

### Background

18. Campbell is a global food company that sells soups, packaged meals, beverages, snacks, and packaged fresh foods.

19. The Company is divided into three divisions: (i) "Americas Simple Meals and Beverages," which includes brands such as Campbell's soup, Swanson broth, Prego pasta sauce, Pace salsa, and V8 vegetable juice; (ii) "Global Biscuits and Snacks," which includes brands such as Pepperidge Farms, Snyder's of Hanover pretzels, Cape Cod potato chips, Pop Secret popcorn, and Lance crackers; and (iii) "Campbell Fresh," which includes Bolthouse Farms fresh carrots and carrot ingredients, Bolthouse Farms refrigerated beverages, Bolthouse Farms salad dressings, Garden Fresh Gourmet salsa, and Garden Fresh Gourmet hummus.

**Materially False and Misleading Statements Issued During the Class Period**

20. The Class Period begins on August 31, 2017, to coincide with the Company's announcement of its financial results for the fourth quarter and full fiscal year 2017. As part of this announcement, the Company issued fiscal year 2018 financial guidance for adjusted earnings before interest and taxes ("EBIT") growth between -1 percent and 1 percent, and adjusted earnings per share ("EPS") growth between 0 percent and 2 percent (equating to EPS of $3.04 to $3.11).

21. During Campbell's quarterly conference call held that same day, Defendant Morrison stated that the Company expected the Campbell Fresh division to "return to profitable growth in fiscal 2018" and "plan[ned] for the [Campbell Fresh division] to grow profitably in fiscal 2018." Similarly, Defendant DiSilvestro assured investors that the Company "expect[ed] [Campbell Fresh] to have sufficient capacity to support [the Company's] growth plans in fiscal 2018."

22. The statements contained in ¶¶ 20-21 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that were negatively impacting the profitability of the Campbell Fresh division; and (ii) as a result of the foregoing, Defendants' positive statements about the Company's and the Campbell Fresh division's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

**The Truth Begins to Emerge**

23. On November 21, 2017, shareholders began to learn the truth about the Campbell Fresh division's true prospects for profitable growth, when Campbell announced disappointing first quarter 2018 financial results. According to Defendant Morrison, "Campbell Fresh sales were comparable to a year ago," while the Company reported that Campbell Fresh operating earnings decreased from a gain of $1 million in first quarter fiscal 2017 to a loss of $6 million in first quarter fiscal 2018.

24. Based, in part, on the poor performance of the Campbell Fresh division, Campbell reduced its fiscal year 2018 guidance for EBIT growth to between -4 percent and -2 percent, and EPS growth to between -3 percent and -1 percent.

25. Nevertheless, during Campbell's quarterly conference call later that day, Defendants Morrison and DiSilvestro attempted to reassure investors regarding the Campbell Fresh division's prospects for profitable growth. Specifically, Defendant Morrison assured investors that the Company "continue[d] to expect Campbell Fresh to return to profitable growth this fiscal year" while Defendant DiSilvestro similarly noted that the Company "expect[ed] to see profitability pretty quick in Campbell Fresh."

26. Despite Defendants' attempts to assuage shareholder concerns, the price of Campbell common stock fell over 8% in response to the poor results and

lowered guidance, from a close of $49.93 per share on November 20, 2017, to close at $45.84 per share on November 21, 2017.

27. The statements contained in ¶¶ 24-25 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that were negatively impacting the profitability of the Campbell Fresh division; and (ii) as a result of the foregoing, Defendants' positive statements about the Company's and the Campbell Fresh division's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

28. Investors learned more about the Campbell Fresh division's true prospects on February 16, 2018, when the Company announced "disappointing" financial results for the second quarter of fiscal year 2018 that were "driven by continued challenges in . . . Campbell Fresh." According to Defendant Morrison, "Campbell Fresh did not meet expectations" as "[s]ales did not recover as anticipated." Specifically, Campbell Fresh's sales "decreased 1 percent to $257 million driven primarily by sales declines in *Bolthouse Farms* refrigerated beverages." Similarly, the Company reported that Campbell Fresh's operating earnings declined from a loss of $3 million in second quarter fiscal 2017 to a loss of $11 million in second quarter fiscal 2018.

29. While the Company was forced to further reduce its fiscal year 2018 guidance for EBIT growth to between -6 percent and -4 percent, and EPS growth

to between -5 percent and -3 percent,[1] Defendant Morrison again reassured investors that the Company remained "committed to returning [the Campbell Fresh division] to profitable growth."

30. On a conference call held the same day, Defendants Morrison and DiSilvestro continued their efforts to reassure investors regarding the Campbell Fresh division's prospects for profitable growth, with Defendant Morrison reiterating that the Company was dedicated to "returning [the Campbell Fresh division] to profitable growth," while DiSilvestro added that the Company "expect[ed] to see top line growth and positive EBIT in Campbell Fresh in the second half of the year."

31. On this news, the price of Campbell common stock fell approximately 10% over several trading days, from a close of $47.70 per share on February 15, 2018, to close at $42.90 per share on February 21, 2018.

32. The statements contained in ¶¶ 29-30 were materially false and misleading when made because: (i) Defendants failed to disclose known trends that were negatively impacting the profitability of the Campbell Fresh division; and (ii)

[1] This revised guidance reflects the Company's fiscal year 2018 guidance excluding the impact of the Company's recent acquisition of Pacific Foods and the implementation of the Tax Cuts and Jobs Act. The Company also reported revised fiscal year 2018 guidance, including the impact of the Company's acquisition of Pacific Foods and the implementation of the Tax Cuts and Jobs Act, for EBIT growth of between -7 percent and -5 percent, and EPS growth of between 2 percent and 4 percent.

as a result of the foregoing, Defendants' positive statements about the Company's and the Campbell Fresh division's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

33. Then, on May 18, 2018, the Company reported disappointing financial results for the third straight quarter and admitted that the Campbell Fresh division was not profitable for the first nine months of fiscal 2018. According to the Company, sales in the Campbell Fresh division increased only 1 percent during the third quarter fiscal 2018 versus the third quarter fiscal 2017, while operating earnings further deteriorated—resulting in a loss of $19 million in the third quarter fiscal 2018 as compared to a gain of $1 million in the third quarter fiscal 2017. Campbell also announced that the division's poor performance required the Company to take a $619 million pre-tax non-cash impairment charge for the Campbell Fresh division and prompted the Company to revise its fiscal year 2018 guidance for EBIT growth to between -11 percent and -9 percent, and EPS growth to between -3 percent and -1 percent[2]—marking the third straight quarterly reduction to fiscal year 2018 guidance.

---

2 This revised guidance reflects the Company's fiscal year 2018 guidance including the impact of the Company's recent acquisition of Pacific Foods and the implementation of the Tax Cuts and Jobs Act, but excluding the impact of the Company's recent acquisition of Snyder's-Lance. The Company also reported revised fiscal year 2018 guidance, including the impact of the Company's acquisition of Snyder's-Lance, for EPS growth of between -6 percent and -5 percent.

34. The Company also announced that Morrison was stepping down immediately as Chief Executive Officer of the Company and would be replaced on an interim basis by Keith R. McLoughlin, a Campbell board member.

35. On this news, the price of Campbell common stock fell over 12%, from a close of $39.22 per share on May 17, 2018, to close at $34.37 per share on May 18, 2018.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of all persons who purchased Campbell common stock during the Class Period and were damaged thereby (the "Class"). Excluded from the Class are Defendants and their families, the directors and officers of Campbell, members of their immediate families, and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

37. The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Campbell common stock was actively traded on the NYSE. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class. Record owners and other members of the Class may be identified

from records maintained by Campbell and/or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. These shares are held by hundreds or thousands of individuals located geographically throughout the country. Joinder would be highly impracticable.

38. There is a well-defined community of interest in the questions of law and fact involved in this case. Questions of law and fact common to the members of the Class which predominate over questions which may affect individual Class members include:

a. Whether the Exchange Act was violated by Defendants;

b. Whether Defendants omitted and/or misrepresented material facts;

c. Whether Defendants' statements omitted material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading;

d. Whether Defendants knew or recklessly disregarded that their statements were false and misleading;

e. Whether the prices of Campbell common stock were artificially inflated; and

f. The extent of damage sustained by Class members and the appropriate measure of damages.

39. Plaintiff's claims are typical of the claims of the members of the Class because all members of the Class are similarly affected by Defendants' wrongful conduct in violation of the federal securities laws complained of herein.

40. Plaintiff will fairly and adequately protect the interests of the Class and has retained counsel who are experienced in class action securities litigation. Plaintiff has no interests which conflict with those of the Class.

41. A class action is superior to other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable. Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them. There will be no difficulty in the management of this action as a class action.

**LOSS CAUSATION/ECONOMIC LOSS**

42. During the Class Period, Defendants made false and misleading statements and engaged in a scheme to deceive the market and a course of conduct that artificially inflated the prices of Campbell common stock, as detailed herein, and operated as a fraud or deceit on Class Period purchasers of Campbell common

stock by failing to appropriately disclose problems undermining the profitability of the Company's Campbell Fresh division and the Company as a whole. Later, when Defendants' prior misrepresentations and fraudulent conduct were disclosed to the market, the price of Campbell common stock fell precipitously, as the prior artificial inflation came out of the price. The declines in Campbell's stock price were the direct result of the nature and extent of Defendants' fraud finally being revealed to investors and the market. The timing and magnitude of the share price declines negate any inference that the losses suffered by Plaintiff and other members of the Class were caused by changed market conditions, macroeconomic or industry factors, or Company specific facts unrelated to the Defendants' fraudulent conduct. The economic loss suffered by Plaintiff and other Class members was a direct result of Defendants' fraudulent scheme to artificially inflate the price of the Company's stock and the subsequent significant decline in the value of the Company's stock when Defendants' prior misrepresentations and other fraudulent conduct were revealed.

## SCIENTER ALLEGATIONS

43. During the Class Period, as alleged herein, the Individual Defendants acted with scienter in that the Individual Defendants: (i) knew or were reckless as to whether the public documents and statements issued or disseminated in the name of the Company during the Class Period were materially false and

misleading; (ii) knew or were reckless as to whether such statements or documents would be issued or disseminated to the investing public; and (iii) knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws.

44. The Individual Defendants permitted Campbell to release these false and misleading statements and failed to file the necessary corrective disclosures, which artificially inflated the value of the Company's stock.

45. As set forth herein, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Campbell, their control over, receipt, and/or modification of Campbell's allegedly materially misleading statements and omissions, and/or their positions with the Company that made them privy to confidential information concerning Campbell, participated in the fraudulent scheme alleged herein.

46. The Individual Defendants are liable as participants in a fraudulent scheme and course of conduct that operated as a fraud or deceit on purchasers of Campbell common stock by disseminating materially false and misleading statements and/or concealing material adverse facts. The scheme deceived the investing public regarding the Company's Campbell Fresh division, the Company's and Campbell Fresh's financial prospects, and the intrinsic value of

Campbell common stock, and caused Plaintiff and members of the Class to purchase Campbell common stock at artificially inflated prices.

**APPLICABILITY OF PRESUMPTION OF RELIANCE:**

**FRAUD-ON-THE-MARKET DOCTRINE**

47. Plaintiff will rely upon the presumption of reliance established by the fraud-on-the-market doctrine in that, among other things:

a. Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

b. The omissions and misrepresentations were material;

c. Campbell's common stock traded in an efficient market;

d. The misrepresentations alleged would tend to induce a reasonable investor to misjudge the value of Campbell's common stock; and

e. Plaintiff and other members of the Class purchased Campbell common stock between the time defendants misrepresented or failed to disclose material facts and the time the true facts were disclosed, without knowledge of the misrepresented or omitted facts.

48. At all relevant times, the market for Campbell common stock was efficient for the following reasons, among others: (i) as a regulated issuer,

Campbell filed periodic public reports with the SEC; and (ii) Campbell regularly communicated with public investors via established market communication mechanisms, including through regular disseminations of press releases on the major news wire services and through other wide-ranging public disclosures, such as communications with the financial press, securities analysts, and other similar reporting services.

**NO SAFE HARBOR**

49. Defendants' verbal and written "Safe Harbor" warnings accompanying its oral and written forward-looking statements ("FLS") issued during the Class Period were ineffective to shield those statements from liability.

50. Defendants are also liable for any false or misleading FLS pleaded because, at the time each FLS was made, the speaker knew the FLS was false or misleading and the FLS was authorized and/or approved by an executive officer of Campbell who knew that the FLS was false. None of the historic or present tense statements made by Defendants were assumptions underlying or relating to any plan, projection, or statement of future economic performance, as they were not stated to be such assumptions underlying or relating to any projection or statement of future economic performance when made, nor were any of the projections or forecasts made by defendants expressly related to or stated to be dependent on those historic or present tense statements when made.

**FIRST CLAIM**

**Violation of Section 10(b) of the Exchange Act and Rule 10b-5 against All Defendants**

51. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

52. During the Class Period, Campbell and the Officer Defendants, individually and in concert, directly or indirectly, disseminated or approved the false statements specified above, which they knew or deliberately disregarded were misleading in that they contained misrepresentations and failed to disclose material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading.

53. Campbell and the Individual Defendants: (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's common stock in an effort to maintain artificially high market prices for Campbell common stock in violation of Section 10(b) of the Exchange Act and Rule 10b-5. Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons.

54. As a result of the foregoing, the market price of Campbell common stock was artificially inflated during the Class Period. In ignorance of the falsity of the Company's and the Individual Defendants' statements, Plaintiff and the other members of the Class relied on the statements described above and/or the integrity of the market price of Campbell common stock during the Class Period in purchasing Campbell common stock at prices that were artificially inflated as a result of the Company's and the Individual Defendants' false and misleading statements.

55. Had Plaintiff and the other members of the Class been aware that the market price of Campbell common stock had been artificially and falsely inflated by the Company's and the Individual Defendants' misleading statements and by the material adverse information which the Company and the Individual Defendants did not disclose, they would not have purchased Campbell common stock at the artificially inflated prices that they did, or at all.

56. As a result of the wrongful conduct alleged herein, Plaintiff and other members of the Class have suffered damages in an amount to be established at trial.

**SECOND CLAIM**

**Violation of Section 20(a) of the Exchange Act against the Individual Defendants**

57. Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

58. During the Class Period, the Individual Defendants participated in the operation and management of the Company, and conducted and participated, directly and indirectly, in the conduct of the Company's business affairs. Because of their senior positions, they knew the adverse non-public information regarding the Company's business practices.

59. As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to the Company's financial condition and results of operations, and to correct promptly any public statements issued by the Company which had become materially false or misleading.

60. Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which the Company disseminated in the marketplace during the Class Period. Throughout the Class Period, the Individual Defendants exercised their power and authority to cause the Company to engage in the wrongful acts complained of herein. The Individual Defendants therefore,

were "controlling persons" of the Company within the meaning of Section 20(a) of the Exchange Act. In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of Campbell common stock.

61. By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by the Company.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment, as follows:

a. Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure, designating Plaintiff as Lead Plaintiff, and certifying Plaintiff as a class representative under Rule 23 and Plaintiff's Counsel as Lead Counsel;

b. Awarding compensatory damages and equitable relief in favor of Plaintiff and the other Class members against all Defendants, jointly and severally, for all damages sustained as a result of Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

c. Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

d. Such other and further relief as the Court may deem just and proper.

**JURY TRIAL DEMAND**

Plaintiff hereby demands a trial by jury.

Dated: September 28, 2018

Respectfully submitted,

By: *s/ James E. Cecchi*
James E. Cecchi
Donald A. Ecklund
**CARELLA BYRNE CECCHI OLSTEIN BRODY & AGNELLO, PC**
5 Becker Farm Road
Roseland, NJ 07068-1739
Telephone: (973) 994-1700
Facsimile: (973) 994-1744
jcecchi@carellabyrne.com
decklund@carellabyrne.com

**KESSLER TOPAZ MELTZER & CHECK LLP**
Naumon A. Amjed
Jonathan R. Davidson
Ryan T. Degnan
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056
namjed@ktmc.com
jrdavidson@ktmc.com

rdegnan@ktmc.com

***Attorneys for Plaintiff***